UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACQUELINE WILSON,<br><br>    Plaintiff,<br><br>  v.<br><br>DISTRICT OF COLUMBIA,<br><br>    Defendant. | Civil Action 09-02424 (HHK) |

# MEMORANDUM OPINION

Plaintiff Jacqueline Wilson brings this action against the District of Columbia on behalf of her minor child A.W., seeking a judgment that the District of Columbia Public Schools ("DCPS") deprived A.W. of the free and appropriate public education guaranteed to him by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. Wilson seeks the reversal of an administrative hearing officer's determination that DCPS did not violate A.W.'s rights by failing to provide transportation for extended school year activities mandated by A.W.'s individualized education program. Before the Court are the parties' cross-motions for summary judgment [## 8, 11]. Upon consideration of the motions, the oppositions thereto, and the administrative record of this case, the Court concludes that Wilson's motion must be granted and the District's motion must be denied.

## I. BACKGROUND

**A.**   **Statutory Framework**

Through the IDEA, the federal government provides funding to state and local educational agencies, including those of the District of Columbia, *see* 20 U.S.C. § 1401(31), for

the education of disabled children.  As a condition of receiving that funding, an educational agency must maintain policies and procedures ensuring that a "free appropriate public education is available to all children with disabilities residing in the [jurisdiction] between the ages of 3 and 21."  20 U.S.C. § 1412(a)(1)(A).  A "central component of a disabled student's special education under the IDEA" is the individualized education program ("IEP"), which is a written statement setting out the student's "individually tailored goals and the means of achieving them."  *District of Columbia v. Doe*, 611 F.3d 888, 892 n.5 (D.C. Cir. 2010) (citing 20 U.S.C. § 1414(d)).  The IDEA also guarantees a student's parents "both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate."  *Id.* at 890 (quoting *Honig v. Doe*, 484 U.S. 305, 311–12 (1988)) (internal quotation marks omitted).

**B.      Factual Background**

The facts of this case are essentially undisputed.  A.W. is a District resident with multiple disabilities and is thus entitled to educational services from DCPS under the IDEA.  In October 2008, A.W. (who was nine years old at the time this suit was commenced) began attending the Phillips School of Laurel in Maryland.  In April 2009, Wilson, A.W.'s mother, met with a DCPS IEP team to develop a new IEP to guide A.W.'s education at Phillips.  *See* A.R. at 120–24 (IEP meeting notes, Apr. 23, 2009).  The IEP they produced classified A.W. as multiply disabled and called for him to receive 26.5 hours per week of specialized instruction, one hour per week of behavioral support, one hour per week of occupational therapy, and ninety minutes per week of speech and language therapy.  *See* A.R. at 110–19 (IEP).  The IEP also called for A.W. to participate in an extended school year ("ESY") program, which would take place from July 1 to

July 31, 2009. *See* A.R. at 112–13. The ESY program was expected to encompass a mixture of counseling, therapy, and academic and behavioral development. Admin. Hr'g Tr. 26, Sept. 25, 2009 ("Hr'g Tr.") (test. of Judy Miller). According to the IEP, ESY services were needed because A.W. had difficulty adjusting to the program and staff at Phillips; although he had begun to make developmental progress, that progress was slowed by the issues that he was expected to work on during ESY. A.R. at 112.

On the day the ESY program was scheduled to begin, however, DCPS did not send a bus to transport A.W. to the program. Wilson called DCPS to investigate and was told that "they didn't have their lists together for the bus services," and that transportation services should begin in ten days. Hr'g Tr. 16 (test. of Jacqueline Wilson). Wilson also called Phillips, but was told that DCPS was responsible for transportation. Hr'g Tr. 16–17. DCPS was ultimately unable to provide transportation for the first three weeks of the four-week program; by the end of the third week, Wilson decided that it was not worthwhile to send A.W. to the ESY program for just one week. Consequently, A.W. did not attend the program at all.

Wilson subsequently filed an administrative due process complaint, alleging that DCPS's failure to provide A.W. with transportation to the ESY program denied him the free appropriate education that he is guaranteed under the IDEA and seeking a "Linda Mood Bell Assessment" to determine what amount of compensatory education services were warranted as a result. A.R. at 15 (admin. due process compl. notice). An administrative hearing was held on September 25, 2009. The Hearing Officer determined that A.W. had "offered uncontroverted evidence that DCPS failed to provide [A.W.] transportation to the first three weeks of ESY," but that there was "no evidence as to any educational harm that resulted from the deprivation of these services."

3

A.R. at 6 (Hearing Officer's decision). In particular, he found no indication that A.W. had experienced the type of academic regression that ESY programs are normally intended to prevent. A.R. at 6. He thus concluded that Wilson had failed to establish an IDEA violation and dismissed the complaint with prejudice. Wilson then filed this action, seeking a reversal of the Hearing Officer's decision and an order for testing to determine what educational services A.W. needs to compensate for the denial of the ESY program.

## II. LEGAL STANDARD

A court reviewing an administrative decision under the IDEA "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). "When neither party has requested that the district court hear additional evidence . . . '[t]he motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.'" *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997) (quoting *Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir. 1994)); *see also District of Columbia v. Doe*, 611 F.3d 888, 897 (D.C. Cir. 2010). A court deciding a case in this posture must engage in a more rigorous review of the decision below than is typical in administrative cases, *see Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005), but should nevertheless accord the Hearing Officer's decision "due weight." *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). Further, the party challenging the decision below bears the burden of persuading the Court that it was erroneous. *Doe*, 611 F.3d at 897.

# III. ANALYSIS

The parties' dispute boils down to two questions: did the Hearing Officer err in concluding that, despite DCPS's failure to provide transportation to the ESY program, Wilson had failed to establish an IDEA violation because she had produced no evidence of academic regression? If so, is A.W. entitled to compensatory education? The Court addresses each question in turn.

## A. Did the Hearing Officer Err in Finding No IDEA Violation?

Although the D.C. Circuit has not yet squarely addressed the question of what standard governs failure-to-implement claims under the IDEA,[1] the consensus approach to this question among the federal courts that have addressed it has been to adopt the standard articulated by the Fifth Circuit in *Houston Independent School District v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000). *See Catalan ex rel. E.C. v. District of Columbia*, 478 F. Supp. 2d 73, 75 (D.D.C. 2007), *aff'd sub nom. E.C. v. District of Columbia*, No. 07-7070 (D.C. Cir. Sept. 11, 2007). The *Bobby R.* court wrote:

> [A] party challenging the implementation of an IEP must show more than a *de minimis* failure to implement all elements of that IEP, and, instead, must demonstrate that the school board or other authorities failed to implement substantial or significant provisions of the IEP. This approach affords local agencies some flexibility in implementing IEP's, but it still holds those agencies accountable for material failures and for providing the disabled child a meaningful educational benefit.

---

[1] The D.C. Circuit has noted that, because the IDEA defines "free appropriate public education" to mean special educational services that are, inter alia, "provided in conformity with" a student's IEP, 20 U.S.C. § 1401(9)(D), a "complete failure" to implement a student's IEP is "undoubtedly" a denial of an appropriate education under the IDEA. *Abney ex rel. Kantor v. District of Columbia*, 849 F.2d 1491, 1496 n.3 (D.C. Cir. 1988).

*Bobby R.*, 200 F.3d at 349. Thus, "a court reviewing failure-to-implement claims under IDEA must ascertain whether the aspects of the IEP that were not followed were 'substantial or significant,' or, in other words, whether the deviations from the IEP's stated requirements were 'material.'" *Catalan*, 478 F. Supp. 2d at 75 (quoting *Bobby R.*, 200 F.3d at 349).

Here, the Hearing Officer determined that Wilson had "offered uncontroverted evidence that DCPS failed to provide [A.W.] transportation to the first three weeks of ESY," but that there was "no evidence as to any educational harm that resulted from the deprivation of these services." A.R. at 6. In the absence of "proof of educational harm" flowing from the deprivation of the ESY program, he concluded that Wilson had failed to establish an IDEA violation. A.R. at 6. The Hearing Officer did not address the "substantial or significant" standard or otherwise articulate the standard he was applying.

Wilson argues that the Hearing Officer erred by requiring "proof of educational harm" because the IDEA is violated whenever a school district fails to provide the services mandated by a student's IEP. The District responds that proof of "substantive educational harm" is required because "[m]ere procedural violations" do not deny a student the education guaranteed by the IDEA. Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") at 6. The District's response is unavailing.

The District's observation that a student cannot prevail on a failure-to-implement claim merely by pointing to "procedural" or *de minimis* IEP violation is accurate. That observation, however, is not pertinent to the argument Wilson makes in support of her claim. Wilson does not advocate for a *per se* rule under which any departure from a student's IEP, no matter how slight, constitutes a denial of education under the IDEA. Rather, Wilson correctly argues that the IDEA

6

is violated when a school district deviates *materially* from a student's IEP. *See Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 822 (9th Cir. 2007) ("[A] *material* failure to implement an IEP violates the IDEA. A material failure occurs when there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP."); *accord S.S. ex rel. Shank v. Howard Road Acad.*, 585 F. Supp. 2d 56, 68 (D.D.C. 2008); *Catalan*, 478 F. Supp. 2d at 75.

Moreover, evidence of the type required by the Hearing Officer — while often useful — is not necessary to establish that a departure from an IEP constituted a material failure to implement that IEP: "the materiality standard *does not require that the child suffer demonstrable educational harm* in order to prevail" on a failure-to-implement claim. *Van Duyn*, 502 F.3d at 822 (emphasis added); *cf. MM ex rel. DM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 537 n.17 (4th Cir. 2002) (rejecting the argument that parents must show actual developmental regression before their child is entitled to ESY services under the IDEA). Rather, courts applying the materiality standard have focused on the proportion of services mandated to those actually provided, and the goal and import (as articulated in the IEP) of the specific service that was withheld. *See, e.g., Van Duyn*, 502 F.3d at 822; *S.S.*, 585 F. Supp. 2d at 65–68; *Mary McLeod Bethune Day Acad. Pub. Charter Sch. v. Bland*, 534 F. Supp. 2d 109, 115–16 (D.D.C. 2008); *Catalan*, 478 F. Supp. 2d at 76.

Because the Hearing Officer applied the wrong legal standard, his decision warrants little deference. *Cf. S.S.*, 585 F. Supp. 2d at 65. Accordingly, the Court will determine whether, under the correct standard, A.W. has been denied the education to which he is entitled under the IDEA. *See id.* at 66 ("Because the court's review must be 'independent,' and based on a preponderance

7

of the evidence, . . . the court's focus is not simply on whether the hearing officer erred, but rather, more broadly, [on] whether the child involved is receiving the free appropriate public education mandated in the IDEA." (quoting *Gellert v. D.C. Pub. Schs.*, 435 F. Supp. 2d 18, 25 (D.D.C. 2006))).

A.W.'s IEP stated that he required ESY services because his progress at Phillips had been slowed by his difficulty adjusting to the new program and staff. A.R. at 112; *see* Hr'g Tr. 26 (test. of Judy Miller) (stating that ESY was required because A.W. had "just started making some . . . progress"). The IEP also set out fifteen goals in four categories (emotional development, academic ability, communication skills, and physical development) that A.W. would try to reach during his ESY program. A.R. at 112. Thus, DCPS was required — both by the terms of A.W.'s IEP and by federal regulations, *see* 34 C.F.R. § 300.106(a) — to provide A.W. with the ESY services prescribed by the IEP team. In a near-identical situation, the *S.S.* court had little trouble concluding that the school's complete failure to provide ESY services "constituted a material failure to implement [S.S.'s] IEP." *S.S.*, 585 F. Supp. 2d at 68.

The Court sees no basis to reach a different outcome here. The fact that A.W. apparently matured and made academic progress during the following school year, *see* Hr'g Tr. at 29–30, while fortunate, does not excuse DCPS's failure to provide a service that A.W.'s IEP team felt was "required" for his continued development.[2] DCPS's failure to transport A.W. to the ESY program was neither a "procedural" IDEA violation, *see Lesesne ex rel. B.F. v. District of*

---

[2] Indeed, the Court has no way of knowing how much *more* progress A.W. might have shown if he had attended the ESY program. Judy Miller, an educational program supervisor at Phillips who was familiar with A.W.'s progress, testified below that A.W. could have benefitted from the ESY program and that he was still performing below grade level. *See* Hr'g Tr. at 27.

*Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006) (collecting cases), nor a "minor discrepancy" between the IEP as written and as implemented. *See Van Duyn*, 502 F.3d at 822; *Catalan*, 478 F. Supp. 2d at 76 (finding no IDEA violation where the student received services "in accordance with his IEP" and the deviations that occurred were "excusable under the circumstances"). Because DCPS almost entirely failed to provide a service that A.W.'s IEP team determined was necessary for his educational development, it denied him the education that the law requires.[3]

## B.     Is Compensatory Education Warranted?

Compensatory education is, as the term suggests, educational service that is intended to compensate a disabled student who has been denied the individualized education guaranteed by the IDEA. *See Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005). The D.C. Circuit has explained that a court's goal in awarding compensatory education should be "to place disabled children in the same position they would have occupied but for the school district's violations of IDEA." *Id*.

Here, Wilson asks the Court to order DCPS to fund an assessment of how the ESY denial impacted A.W.[4] and to require DCPS to provide whatever services the assessment determines are needed. Compl. at 5 (prayer for relief). The District argues that Wilson produced no evidence below that could support an award of compensatory education. Def.'s Mem. at 8–9. Because he found no IDEA violation, the Hearing Officer did not reach this issue.

---

[3]     The Court cannot accept Wilson's contention that DCPS is responsible for depriving A.W. of the *entire* ESY program; Wilson's decision not to send A.W. to the program during its fourth week, when DCPS was finally able to provide transportation, was — while apparently the result of understandable frustration — her own.

[4]     Specifically, Wilson seeks a "Lindamood Bell Assessment," which appears to refer to a particular provider of educational services.

The Court concludes that the record lacks sufficient information for it to make an informed decision as to the proper amount, if any, of compensatory education to which A.W. is entitled.[5] Contrary to the District's assertion, however, the paucity of evidence on this question does not warrant summary judgment in the District's favor. Once a student has established a denial of the education guaranteed by the IDEA, the Court or the hearing officer must undertake "a fact-specific exercise of discretion" designed to identify those services that will compensate the student for that denial. *Reid*, 401 F.3d at 524; *see Stanton ex rel. K.T. v. District of Columbia*, 680 F. Supp. 2d 201, 207 (D.D.C. 2010); *Phillips ex rel. T.P. v. District of Columbia*, 736 F. Supp. 2d 240, 247 (D.D.C. 2010). Where the record does not allow for that inquiry, remand or additional fact-finding is necessary. *See Reid*, 401 F.3d at 526 ("[I]n light of the absence of pertinent findings in the administrative record and given that both parties previously filed cross-motions for summary judgment rather than exercising their right to 'request' consideration of additional evidence, the district court may determine that the 'appropriate' relief is a remand to the hearing officer for further proceedings."); *Henry v. District of Columbia*, 2010 WL 4568841, at *3 (D.D.C. Nov. 12, 2010); *S.S.*, 585 F. Supp. 2d at 71–72. Accordingly, the Court will remand this case to the Hearing Officer "to conduct the 'fact-specific exercise of discretion' required by *Reid*, and to craft an award that 'aim[s] to place [A.W.] in the same place [he] would have occupied but for the school district's violations of [the] IDEA.'" *Henry*, 2010 WL 4568841, at *3 (quoting *Reid*, 401 F.3d at 518) (first, third and fourth alterations in original).

---

[5] In particular, the record is devoid of any description of the particular assessment that Wilson requests, and fails to explain how or why that assessment will identify the amount and type of services that would "place [A.W.] in the same position [he] would have occupied but for the school district's violations of IDEA." *Reid*, 401 F.3d at 518.

## IV. CONCLUSION

For the foregoing reasons, Wilson's motion for summary judgment must be granted and the District's motion for summary judgment must be denied. On remand, the Hearing Officer must conduct the "fact-specific exercise of discretion" described in *Reid*, which will require evidence showing the effect on A.W., if any, of the denial of the ESY services that were prescribed by his IEP. *See Reid*, 401 F.3d at 526.

Henry H. Kennedy, Jr.
United States District Judge